UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------------X

ELIJAH FIGUEROA,

                                                                Plaintiff,

                              -against-

THE CITY OF NEW YORK, NYPD POLICE OFFICER JASON
G. SCHRECKENSTEIN (SHIELD NO. 1340, TAX ID NO.
956247), NYPD POLICE OFFICER JEFFREY ROSA (BADGE
NO. 26080, TAX ID NO. 964259), and NYPD SERGEANT
ANDRZEJ BABIUCH (BADGE NO. 716, TAX ID NO. 946764),

                                                                Defendants.
-------------------------------------------------------------------------------------X

**VERIFIED COMPLAINT**

Docket No.:

**PLAINTIFF DEMANDS A TRIAL BY JURY**

Plaintiff **ELIJAH FIGUEROA,** by and through his attorneys, **KAISHIAN & MORTAZAVI LLC**, by S. Masoud Mortazavi, an attorney duly licensed to practice before this Court in the Eastern District of New York, hereby complains of Defendants as follows:

## PRELIMINARY STATEMENT

1.    On April 14, 2023, members of the New York City Police Department unlawfully stopped, searched, and arrested Plaintiff ELIJAH FIGUEROA while he was a backseat passenger in a lawfully operated motor vehicle in Kings County, New York. Plaintiff was unlawfully arrested and detained. The Kings County District Attorney's Office declined prosecution arising out of this unlawful arrest on April 15, 2023. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff lost both his employment and his place in the New York City Fire Department's Fire Cadet Program. Plaintiff now charges Defendants with, *inter alia*, unlawful search and seizure, excessive force, violation of his First Amendment rights, and municipal liability, pursuant to 42 U.S.C. §1983 and New York City law.

## PARTIES

2.    PLAINTIFF ELIJAH FIGUEROA is, and was at all relevant times, a lawful adult resident of Queens County, City and State of New York.

3.    DEFENDANT CITY OF NEW YORK ("Defendant City" or "New York City") was, at all relevant times, and is a municipal corporation duly organized and existing under the laws of the State of New York, acting by and through its agencies, including but not limited to the New York City Police Department ("NYPD") and its employees and agents.

4.    DEFENDANT NYPD POLICE OFFICER JASON G. SCHRECKENSTEIN (Shield No. 1340)("Defendant Schreckenstein"), at all relevant times, was a police officer employed by Defendant City through its police department, the NYPD. At all relevant times, Defendant Schreckenstein was assigned to the NYPD's 71st Precinct, Neighborhood Safety Team. At all relevant times, Defendant Schreckenstein was acting within the scope of his employment and in his capacity as an agent and/or employee of Defendant City. He is sued individually and as an employee/agent of Defendant City for whom Defendant City is liable.

5.    DEFENDANT NYPD POLICE OFFICER JEFFREY ROSA (Badge No. 26080)("Defendant Rosa"), at all relevant times, was a police officer employed by Defendant City through its police department, the NYPD. At all relevant times, Defendant Rosa was assigned to the NYPD's 71st Precinct, Neighborhood Safety Team. At all relevant times, Defendant Rosa was acting within the scope of his employment and in his capacity as an agent and/or employee of Defendant City. He is sued individually and as an employee/agent of Defendant City for whom Defendant City is liable.

6.    DEFENDANT NYPD SERGEANT ANDRZEJ BABIUCH (Badge No. 716)("Defendant Babiuch"), at all relevant times, was a sergeant and supervisor of the police officer NYPD

Defendants employed by Defendant City through its police department, the NYPD. At all relevant times, Defendant Babiuch was assigned to the NYPD's 71st Precinct, Neighborhood Safety Team. At all relevant times, Defendant Babiuch was acting within the scope of his employment and in his capacity as an agent and/or employee of Defendant City. He is sued individually and as an employee/agent of Defendant City for whom Defendant City is liable.

7. At all times hereinafter mentioned, all individual Defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State or City of New York.

8. Each and every act and omission by the individual Defendant NYPD Members alleged herein occurred while said Defendants were acting within the scope of their employment by Defendant City.

9. The Defendant NYPD Members were duly appointed and acting officers, servants, employees, and agents of Defendant City who were acting for, on behalf of, and with the power and authority vested in them by Defendant City and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties.

10. At all times relevant herein, as set forth more fully below, Defendants' actions and/or failures to act were malicious, intentional, knowing, and/or with a deliberate indifference to or a reckless regard for the natural and probable consequences of their acts and/or omissions.

11. Although they were aware of the conduct, present for it, and knew or should have known it was unconstitutional, at no time did any of the Defendants take any steps to intervene in the abusive and/or constitutionally and legally deficient conduct of their colleagues.

12. Each individual Defendant NYPD Member is sued in their respective individual capacities and as employees for whom Defendant City is liable.

13. As described herein, the unlawful conduct of the Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

## JURISDICTION AND VENUE

14. This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331, 1343 and 1367, including 1367(a), and 1441, and 42 U.S.C. § 1983.

15. Venue is proper, pursuant to 28 U.S.C. § 1391, et seq., in the Eastern District of New York, where the actions complained of herein occurred.

16. The monetary damages amount sought by Plaintiff exceeds the amount over which lower courts may exercise discretion.

17. This action was initiated within three years of the accrual of all claims pursuant to 42 U.S.C. § 1983 and NYC Admin. Code § 8-801, et seq.

## STATEMENT OF MATERIAL FACTS

18. On April 14, 2023, at approximately 7:50 PM, Plaintiff ELIJAH FIGUEROA was a backseat passenger in a 2002 gold Acura MDX bearing New York license plate number KPM8581, traveling westbound on Empire Boulevard toward Flatbush Avenue in Kings County, City and State of New York.

19. At the time of this incident, Plaintiff was employed full-time by Singapore Airlines at John F. Kennedy International Airport. Plaintiff was also enrolled in and actively training in the New York City Fire Department's Cadet Program, having participated in that program for approximately one year. Plaintiff was approximately one month away from commencing employment as a fire cadet with the FDNY.

20. There was no warrant for Plaintiff's arrest.

21. Plaintiff had committed no crimes or infractions.

22. Defendants possessed no probable cause to arrest Plaintiff.

23. Defendants possessed no legal justification to search and/or seize Plaintiff or the vehicle in which he was a passenger.

24. Plaintiff had no criminal matters pending against him.

25. Plaintiff was not on probation or parole.

26. Plaintiff had no outstanding warrants.

27. At approximately 7:50 PM, Defendant Schreckenstein, Defendant Rosa, and Defendant Babiuch, members of Defendant City's NYPD 71st Precinct Neighborhood Safety Team, stopped the vehicle in which Plaintiff was a passenger.

28. Defendant Schreckenstein, Defendant Rosa, and Defendant Babiuch approached the vehicle. Defendant Rosa approached the passenger side of the vehicle and ordered the front passenger to exit the vehicle and then ordered Plaintiff to exit the vehicle as well. Plaintiff complied with Defendant Rosa's order.

29. Defendant Schreckenstein ordered the operator out of the vehicle.

30. All three occupants complied. Plaintiff did not resist or obstruct.

31. All three were ordered to stand at the rear of the vehicle.

32. As Plaintiff was standing in the rear of the vehicle, he had his cellphone in his hand. Plaintiff was not using his cellphone in a manner that obstructed any officer or interfered with any police function. No part of Plaintiff's cellphone was directed at or in the face of any officer.

33. Defendant Babiuch, upon information and belief was the supervising sergeant on the scene, observed Plaintiff holding his cellphone and directed Plaintiff and all occupants of the vehicle that they were not permitted to record the encounter, stating in sum and substance that recording the officers was not permitted. Plaintiff responded that he was recording the interaction for his safety, but Defendant Babiuch demanded he put his phone down and stop recording. Plaintiff complied.

34. Defendant Babiuch had no lawful basis for demanding that Plaintiff stop recording.

35. Defendant Rosa proceeded to conduct a warrantless, nonconsensual search of the vehicle, while Defendant Schreckenstein and Defendant Babiuch held Plaintiff by the rear of the vehicle.

36. During the unlawful search of the vehicle, Defendant Rosa allegedly located a black bag in the area of the rear passenger seat where Plaintiff had been seated.

37. Defendants searched the bag and alleged it contained a quantity of a controlled substance.

38. Following the unlawful search, Defendants conducted a custodial interrogation of all three occupants without administering Miranda warnings.

39. During this custodial interrogation, Defendant Schreckenstein, under the supervision of Defendant Babiuch, demanded that one of the three occupants claim ownership of the contents of the bag, stating in sum and substance that if no one answered, all three individuals would be taken to the precinct.

40. In direct response to this coercive ultimatum, and in an effort to prevent his two friends from being arrested, Plaintiff stated in sum and substance that the contents of the bag were his.

41. This statement was made in direct response to a coercive custodial interrogation conducted without Miranda warnings. It was not a spontaneous or voluntary admission.

42. Defendant Schreckenstein then placed Plaintiff under arrest. The other two occupants were not arrested.

43. Defendant Schreckenstein applied handcuffs to Plaintiff's wrists. Plaintiff did not resist arrest in any manner.

44. The handcuffs applied to Plaintiff's wrists were overly tight and caused Plaintiff pain in his wrists during his detention. Plaintiff complained about the tightness of the handcuffs to police officers during his detention, but his complaints were ignored.

45. Plaintiff was transported to the NYPD's 71st Precinct, where he was photographed, fingerprinted, and placed in a cell.

46. When Plaintiff asked his arresting officer at the precinct why he had been stopped, the arresting officer refused to speak to him. When Plaintiff asked why he was being arrested and what he would be charged with, the arresting officer refused to answer. At no time during his detention was Plaintiff told why he had been stopped, why he had been arrested, or what he was being charged with.

47. Plaintiff was subsequently transported to central booking. Plaintiff never appeared before a judge, never saw an attorney at central booking, and never appeared in court in connection with this arrest.

48.    Plaintiff was released from central booking on April 15, 2023, at approximately 7:00 PM, approximately twenty-three hours after his arrest.

49.    The Kings County District Attorney's Office declined prosecution arising out of the arrest on April 15, 2023.

50.    Defendant Schreckenstein's arrest paperwork and the statement of facts submitted to the Kings County District Attorney's Office materially misrepresented the circumstances of Plaintiff's arrest. Specifically, Defendant Schreckenstein's paperwork represented that Plaintiff voluntarily and spontaneously stated that the contents of the bag were his, omitting entirely that this statement was made in direct response to a coercive custodial ultimatum delivered without Miranda warnings by Defendant Schreckenstein under the supervision of Defendant Babiuch. This materially false and misleading narrative was provided to the Kings County District Attorney's Office to induce Plaintiff's prosecution.

51.    As a direct and proximate result of Plaintiff's arrest, the Port Authority of New York and New Jersey was notified of Plaintiff's arrest and sent Plaintiff a letter advising that he could not work and could not hold his airport badge until he resolved his legal situation. Plaintiff was thereby terminated from his employment with Singapore Airlines at John F. Kennedy International Airport directly as a result of the arrest.

52.    As a direct and proximate result of Plaintiff's arrest, Plaintiff was removed from the FDNY Fire Cadet Program on the same day he lost his Singapore Airlines position. Plaintiff lost both positions on the same day. Plaintiff had earned no income yet from the FDNY Fire Cadet Program. Plaintiff was approximately one month away from commencing paid employment as a fire cadet at the time of his arrest.

53. As a result of Defendants' conduct, Plaintiff suffered and continues to suffer psychological anguish and emotional damages, including fear, anxiety, humiliation, and depression.

54. The full extent of Plaintiff's injuries and damages are not yet known and their effects are ongoing.

## FIRST CLAIM FOR RELIEF

## Municipal Liability

As Against DEFENDANT CITY Pursuant to Monell v. Social Svcs. (436 U.S. 658 [1978]) and 42 U.S.C. § 1983 for Defendants' Violations of Plaintiff's Rights Against Unlawful Search and Seizure Under the Fourth and Fourteenth Amendments

55. Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

56. At all relevant times, Defendant City, by its policymaking officials, was responsible for implementing and enforcing policies and procedures on behalf of Defendant City.

57. The facts pleaded above describe the policies, practices, and customs to which Defendants subjected Plaintiff, including, inter alia, the NYPD's de facto policies of conducting unlawful stops and searches of vehicle occupants without reasonable suspicion or probable cause, conducting custodial arrests in circumstances where the law does not authorize custodial arrest, conducting custodial interrogations without Miranda warnings, and suppressing civilian recording of police activity in public spaces.

58. All wrongful acts or omissions complained of herein were carried out by the individual named NYPD Member Defendants pursuant to the above-described policies, practices, and customs.

59. All acts were carried out in accordance with: (a) formal policies, rules, and procedures of Defendant City; (b) actions and decisions by Defendant City's policymaking agents

including, but not limited to, the NYPD Chief of Department and Chief of Patrol; (c) customs, practices, and usages of the NYPD that are so widespread and pervasive as to constitute de facto policies accepted, encouraged, condoned, ratified, sanctioned, and/or enforced by Defendant City and its agents; and (d) Defendant City's deliberate indifference to Plaintiff's rights, including those secured by the Fourth and Fourteenth Amendments of the United States Constitution.

60. These policies and customs include, without limitation: (a) the NYPD's pattern and practice of conducting unconstitutional stops and searches of individuals and vehicles without reasonable suspicion or probable cause, as documented by the findings of the federal monitor appointed pursuant to the consent decrees *in Floyd, et al. v. City of New York*, 08-CV-1034 (AT)*, Ligon, et al. v. City of New York,* et al., 12- CV-2274 (AT), *and Davis, et al. v. City of New York, et al.,* 10-CV-0699 (AT); (b) the NYPD's pattern and practice of submitting materially false and misleading statements to the Kings County District Attorney's Office to induce prosecutions; and (c) the NYPD's pattern and practice of suppressing civilian recording of police activity in public spaces.

61. Defendant City accepted, encouraged, condoned, ratified, sanctioned, and/or enforced these policies, whether expressly or tacitly, and created the conditions giving rise to Plaintiff's serious injuries and damages.

62. As a direct and proximate result of Defendant City's policies, practices, and customs, Plaintiff suffered the injuries and damages described herein.

## SECOND CLAIM FOR RELIEF

### Unlawful Search and Seizure

**As Against Defendant Schreckenstein, Defendant Rosa, and Defendant Babiuch Pursuant to 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments**

63.   Plaintiff incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

64.   Defendants at all times lacked lawful authority to seize and/or detain and/or search Plaintiff's person, the vehicle in which Plaintiff was a passenger, or the personal property located within that vehicle.

65.   Defendants' stop of the vehicle, search of the vehicle and its occupants, and seizure of Plaintiff and his property had no lawful basis.

66.   At no time did Plaintiff or the vehicle's occupants consent to the warrantless search of the vehicle or their persons.

67.   Plaintiff was conscious of Defendants' intrusions as described herein.

68.   The entirety of Defendants' conduct in searching and seizing Plaintiff and the vehicle was unlawful.

69.   As a result of Defendants' unlawful search and seizure, Plaintiff suffered the injuries and damages described herein.

70.   Defendants are liable to Plaintiff for the injuries, intrusions, and deprivations caused by this conduct.

### THIRD CLAIM FOR RELIEF

### Violations of Plaintiff's Fair Trial Rights

As Against Defendant Schreckenstein and Defendant Babiuch Pursuant to 42 U.S.C. § 1983 and the Sixth and Fourteenth Amendments

71.   Plaintiff incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

72. Defendant Schreckenstein, under the supervision of Defendant Babiuch, was an investigating official involved in arresting and processing Plaintiff and in submitting information to the Kings County District Attorney's Office in connection with this arrest.

73. Defendant Schreckenstein fabricated and/or materially misrepresented evidence likely to influence a finder of fact and forwarded that information to prosecutors. Specifically, Defendant Schreckenstein's statement of facts submitted to the Kings County District Attorney's Office represented that Plaintiff made a spontaneous voluntary admission of ownership of the contraband, while omitting entirely that this statement was coercively elicited through a custodial interrogation conducted without Miranda warnings in which all three occupants were threatened with arrest if no one claimed ownership.

74. This false and misleading information was disseminated to prosecutors to intentionally misrepresent the circumstances of Plaintiff's arrest, to exonerate Defendants of wrongdoing, and to taint any potential finder of fact.

75. As a result of Defendants' conduct, Plaintiff was deprived of liberty and caused to suffer all damages described herein.

## FOURTH CLAIM FOR RELIEF

### Excessive Force

Against Defendant Schreckenstein, Pursuant to 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments

76. Plaintiff incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

77. Defendant Schreckenstein applied overly tight handcuffs to Plaintiff's wrists during his detention, causing Plaintiff pain in his wrists.

78. Plaintiff complained about the tightness of the handcuffs to police officers during his detention. Defendants failed to loosen or adjust the handcuffs in response to Plaintiff's complaints.

79. At no time did Plaintiff resist arrest, attempt to flee, or otherwise contribute to any scenario that might mitigate either Defendants' application of overly tight handcuffs or their refusal to adjust the same.

80. Defendant Schreckenstein's use of excessive force against Plaintiff was unjustified, objectively unreasonable, and clearly intended as punishment when taking into consideration the facts and circumstances that confronted Defendants.

81. As a result of Defendants' acts and omissions, Defendants deprived Plaintiff of federal and other legal rights, caused Plaintiff bodily injury, pain, suffering, psychological and/or emotional injury, and humiliation, and caused Plaintiff to expend costs.

## **FIFTH CLAIM FOR RELIEF**

### **Violation of Plaintiff's First Amendment Rights**

As Against Defendant Babiuch Pursuant to 42 U.S.C. § 1983 and the First and Fourteenth Amendments

82. Plaintiff incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

83. Defendants imposed restrictions on Plaintiff's protected speech and/or conduct that violated Plaintiff's First Amendment rights, including, but not limited to, in unlawfully seizing and searching Plaintiff, in subjecting Plaintiff to excessive force, in selectively enforcing laws and regulations against Plaintiff, in subjecting Plaintiff to Defendants' harmful policies, and in otherwise violating Plaintiff's rights and engaging in the acts and omissions complained of herein.

84. At the time of the stop, Plaintiff had his cellphone in his hand. Plaintiff was not obstructing any officer, was not directing his telephone at any officer's face, and was not interfering with any police function in any manner.

85. Defendant Babiuch, the supervising sergeant on the scene, directed Plaintiff and all occupants of the vehicle that they were not permitted to record the encounter, falsely invoking officer safety as the stated justification for this instruction.

86. Defendant Babiuch's instruction constituted an unlawful prior restraint on Plaintiff's First Amendment rights and an unlawful chilling of Plaintiff's right to record police activity.

87. As a result of Defendant Babiuch's conduct, Plaintiff was deprived of his First Amendment rights and suffered damages as described herein.

## SIXTH CLAIM FOR RELIEF

### Excessive Force and Unlawful Search and/or Seizure

Against Individual NYPD Defendants and Defendant City Pursuant to NYC Admin. Code Ch. 8, Tit. 8, § 8-801 et seq.

88. Plaintiff incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

89. Defendant NYPD Members, as police officers employed by Defendant City, are "covered individuals" as defined in NYC Admin. Code Ch. 8, Tit. 8, § 8-801.

90. As described above, the Defendant NYPD Members violated Plaintiff's right to be free from "unreasonable searches and seizures, and to be secure against the use of excessive force regardless of whether such force is used in connection with a search or seizure."

91. Through Defendants' conduct described herein, Defendant NYPD Members utilized excessive force against Plaintiff and subjected him to unreasonable searches and seizures.

92.    Under this provision, Defendant NYPD Members may not invoke the defense of qualified immunity to defeat Plaintiff's claims against them.

93.    Under this provision, Plaintiff is entitled to compensatory and punitive damages, attorney's fees and costs, and an order restraining Defendant City and its NYPD members from engaging in further violative conduct.

94.    Defendant NYPD Members and their employer, Defendant City, are liable to Plaintiff for this conduct and Plaintiff's resulting damages and injuries.

**SEVENTH CLAIM FOR RELIEF**

**Interference and/or Retaliation Against the Right to Record Police Activities**
**Against All Defendants Pursuant to NYC Admin. Code § 14-189**

95.    Plaintiff incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

96.    As described above, the Defendants violated Plaintiff's right to be free from interference when lawfully recording police activity.

97.    Pursuant to NYC Admin. Code Title 14, Chapter 14, §§ 14-189 of the New York City Civil Rights Law, Plaintiff maintains a private right of action against the individual NYPD Defendants and their employer, Defendant City, for this conduct.

98.    The NYPD Defendants, as employees of the Defendant City's police department, are police officers and were engaging in police activities as defined in this Chapter.

99.    Plaintiff was visibly and lawfully recording police activities prior to his arrest.

100.    Plaintiff was not interfering with lawful police conduct while recording this police activity.

101.    Defendants interfered with Plaintiff's ability to record and/or retaliated against him for recording by utilizing excessive force, obstructing cameras intentionally, and otherwise interfering with this right as defined in the instant Chapter.

102. Under § 14-189, Plaintiff may initiate a private right of action for Defendants' conduct, and is entitled to compensatory and punitive damages, attorney's fees and costs, and declaratory and/or injunctive relief.

103. The remedies provided by this chapter are in addition to any other remedies that may be provided for under common law or pursuant to any other law or rule.

## DAMAGES

104. As a direct and proximate result of Defendants' conduct, Plaintiff suffered the following injuries and damages: (a) loss of his full-time employment with Singapore Airlines at John F. Kennedy International Airport, with documented weekly earnings of approximately $700; (b) removal from the FDNY Fire Cadet Program, foreclosing a career as a New York City firefighter that was approximately one month from commencement, with attendant loss of lifetime earnings, pension, and benefits; (c) physical injury in the form of wrist pain caused by overly tight handcuffs during approximately twenty-three hours of detention; (d) psychological and emotional injuries including fear, anxiety, humiliation, and depression; (e) deprivation of liberty during approximately twenty-three hours of unlawful detention; and (f) costs and expenses arising from this matter.

105. The full extent of Plaintiff's injuries and damages are not yet known and their effects are ongoing.

## DEMAND FOR A JURY TRIAL

Plaintiff hereby demands a jury trial of all issues capable of being determined by a jury.

## CONCLUSION AND DEMAND FOR JUDGMENT

WHEREFORE, Plaintiff respectfully seeks relief from this Court and demands judgment against the individual Defendants and the City of New York in the following forms:

i.      Actual and punitive damages against the individual Defendants in an amount to be determined at trial;

ii.     Actual damages in an amount to be determined at trial against Defendant City;

iii.    Policy change and remedial training;

iv.     Statutory attorney's fees, disbursements, punitive damages, actual damages, and costs of the action pursuant to, inter alia, 42 U.S.C. § 1988 and NYC Admin. Codes § 8-801 and § 14-189;

and    v.      Such other relief as the Court deems just and proper.

**Dated:**      Brooklyn, New York
        April 14, 2026

                        **KAISHIAN & MORTAZAVI LLC**
                        **Attorneys for Plaintiff**

                By: _____
                        S. Masoud Mortazavi, Esq.

## ATTORNEY VERIFICATION

I, S. MASOUD MORTAZAVI, an attorney duly admitted to practice before the Courts of the Eastern District of the United States, affirm the following to be true under the penalties of perjury:

1.  I am the attorney of record for the Plaintiff.

2.  I have read the annexed Complaint and know the contents thereof, and the same are true to my knowledge, except those matters therein which are alleged upon information and belief, and as to those matters, I believe them to be true.

3.  My beliefs, as to those matters therein not stated upon knowledge, are based upon facts, records, and other pertinent information contained in my files.

4.  I make this verification because Plaintiff does not currently reside in the County (Kings) where I maintain my office.

**Dated:** Brooklyn, New York
April 14, 2026

By: _____
S. Masoud Mortazavi, Esq.
**Kaishian & Mortazavi LLC**